UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| PATRICK EDDINGTON, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 19-2794 (RC) |
| | : | | |
| v. | : | Re Document Nos.: | 46, 49 |
| | : | | |
| U.S. DEPARTMENT OF STATE, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.  INTRODUCTION

Plaintiff Patrick Eddington submitted a Freedom of Information Act ("FOIA") request to the United States Department of State for any documents mentioning Amir Meshal, a U.S. citizen who was detained by Kenyan and Ethiopian authorities for more than four months during 2007.  Eddington filed this lawsuit after the Department of State denied his request for expedited processing and failed to timely produce the requested records.  The Department of State then made approximately two dozen productions of responsive documents over the ensuing two years.  The scope of the parties' dispute has now narrowed to the Department of State's decision to withhold two unclassified cables recounting information Meshal shared with U.S. officials during consular visits while he was detained.  The Department of State withheld the records under FOIA Exemption 6 because it determined that their release would represent an unwarranted invasion of Meshal's personal privacy.  After reviewing the records *in camera*, the Court finds that Meshal has a privacy interest in their contents, but that the public interest would

be served by the release of some information in one of the cables. The Court does not find this limited intrusion into Meshal's privacy to be unwarranted. The Court therefore instructs the Department of State to release specific portions of the cable in unredacted form.

## II. FACTUAL BACKGROUND

Amir Meshal, a U.S. citizen, filed a *Bivens* action in 2009 alleging that he was detained by a joint U.S.-Kenyan-Ethiopian operation along the Somali border while fleeing unrest in Mogadishu. *See* Ex. 1 to Pl.'s Cross-Mot. Summ. J. ("Meshal Compl."), ECF No. 49-2; *see also* Pl.'s Statement of Undisputed Material Facts ("Pl.'s SUMF") ¶ 10, ECF No. 49-3. In his detailed federal complaint, Meshal alleged that he was arrested by Kenyan security forces in late January 2007 while in possession of his U.S. passport, transported to Nairobi, and held in poor conditions without access to counsel or communications. Meshal Compl. ¶¶ 47–55, 80–81. He alleged that when U.S. officials learned of his presence, agents from the Federal Bureau of Investigation ("FBI") interrogated him several times. *Id.* ¶¶ 56–76, 82–88. Meshal additionally alleged that Kenyan authorities continued to hold him solely at the behest of the FBI, and that the FBI threatened him and denied him access to legal counsel. *See id.* ¶¶ 76–80, 83, 86–91, 96, 99, 102. After Kenyan courts began hearing detainees' habeas petitions, Meshal recounted, he was transferred to Somalia on February 9, 2007, and later sent to Ethiopia on or about February 16, 2007, where he was again kept in poor conditions. *See id.* ¶¶ 108–19, 130–31. Meshal alleged that U.S. officials orchestrated his continued detention by foreign security forces so that they could continue to interrogate him without access to counsel. *Id.* ¶ 122–29A, 132–33, 136–53, 160, 163–65A. On or about May 24, 2007, Meshal was released and flew back to the United States. *Id.* ¶ 166. Meshal asserted that he informed Department of State officials of his

treatment and interrogation by FBI agents during consular visits in Kenya on February 7, 2007, and in Ethiopia on March 21, March 29, and April 3, 2007. *Id.* ¶¶ 103, 157, 159.[1]

On April 26, 2019, Eddington filed a FOIA request with the Department of State, seeking "any Department of State documents that mention Amir Mohamed Meshal, a U.S. citizen . . . who was held by both Kenyan and Ethiopian government entities in 2006-2007." Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 2, ECF No. 49-4. On September 18, 2019, Eddington filed this lawsuit after the Department of State denied his request for expedited processing and failed to timely respond to the FOIA request. *See* Compl., ECF No. 1. Between December 12, 2019, and February 7, 2022, the Department of State made approximately two dozen productions of responsive documents. *See* Pl.'s Resp. to Def.'s Statement of Material Facts ¶ 5, ECF No. 49-4. The Department of State withheld about 600 pages of records, including classified information exempted from disclosure under FOIA Exemption 1. *See id.* ¶ 8. At this stage, Eddington challenges the Department of State's decision to redact information in two unclassified cables under Exemption 6 that it determined would represent a clearly unwarranted invasion of Meshal's personal privacy. The parties cross-move for summary judgment on that issue. *See* Def.'s Mot. Summ. J., ECF No. 46; Pl.'s Cross-Mot. Summ. J., ECF No. 49. Because the parties debate the contents of the cables and their public interest value, the Court instructed the Department of State to submit the records for *in camera* review. *See* Min. Order dated Mar. 12, 2025; Notice of *In Camera* Submission, ECF No. 55.

According to the *Vaughn* Index, the first record is a three-page cable sent from American Embassy Nairobi on March 26, 2007. *See* Ex. C to Def.'s Mot. Summ. J. ("*Vaughn* Index"),

---

[1] The district court dismissed Meshal's case because his claims were not cognizable under *Bivens*, and the D.C. Circuit affirmed. *See Meshal v. Higgenbotham*, 804 F.3d 417, 420, 429 (D.C. Cir. 2015).

3

ECF No. 46-5.  The cable "regard[s] detention of Amir Meshal in Kenya" and "contains private details of Mr. Meshal's ordeal relayed to consular officers during an interview."  *Id.*  This includes "personally identifiable information and information about the travel, detention, and repatriation experience of an American citizen in Somalia and Kenya as provided in an interview to Consular personnel and law enforcement."  *Id.*  The Department of State redacted the Nairobi cable in full, other than a paragraph summarizing the U.S. Ambassador's public remarks on Kenya's deportation of U.S. citizens.  See Redacted Nairobi Cable, ECF No. 56-2.  The Court's *in camera* review of the Nairobi cable confirms that it contains this information.  However, the cable also contains several paragraphs recounting U.S. officials' actions in response to Meshal's detention, including the involvement of FBI officials, consular officials' efforts to access Meshal, and opposition to his transfer to Ethiopia.

The second record is a two-page cable sent from American Embassy Addis Ababa on April 2, 2007, which "detail[s] the detention of an American citizen" and "contains intimate details of the citizen's detention, physical and mental condition, communications with family, and potential mistreatment."  *Vaughn* Index.  The cable also "contains statements regarding the health, conditions of detention, financial information, and familial status of the American citizen."  *Id.*  The Department of State redacted most of this personal information before releasing the record, although unredacted information reveals that the cable concerns Meshal and his detention in Ethiopia.  See Redacted Addis Ababa Cable, ECF No. 56-1.  The Court's *in camera* review confirms the accuracy of this description, and that the cable does not describe U.S. officials' activities.[2]

---

[2] Eddington initially disputed application of Exemption 6 to another cable from American Embassy Addis Ababa that was withheld in full.  *See* Mem. in Supp. of Pl.'s Cross-Mot. Summ. J. at 8–9, 14 n.5, ECF No. 49-1.  The Department clarified that the entire record was subject to

4

## III.  LEGAL STANDARD

The Freedom of Information Act is meant "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)).  It "directs that 'each agency, upon any request for records . . . shall make the records promptly available to any person' unless the requested records fall within one of the statute's nine exemptions." *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008) (quoting 5 U.S.C. § 552(a)(3)(a)).  "Consistent with the Act's goal of broad disclosure," those exemptions should be "given a narrow compass." *U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 151 (1989).  "The agency bears the burden of establishing that a claimed exemption applies." *Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 746 F.3d 1082, 1088 (D.C. Cir. 2014).

Because FOIA cases do not ordinarily involve disputed facts, they "are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009) (citations omitted).  Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In assessing whether the movant has met that burden, a court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008) (citations omitted).  "This burden does not shift even when the requester files a cross-motion for summary judgment because 'the Government ultimately has the onus of proving that the documents are exempt from

---

FOIA Exemption 1 as classified material, and Eddington withdrew his challenge to the cable. *See* Pl.'s Reply at 8 n.1, ECF No. 54.

5

disclosure.'"  *Hardy v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 243 F. Supp. 3d 155, 162 (D.D.C. 2017) (cleaned up) (quoting *Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904–05 (D.C. Cir. 1999)).

Even if a FOIA exemption applies, an agency cannot withhold information unless it also "reasonably foresees that disclosure would harm an interest protected by" the exemption.  5 U.S.C. § 552(a)(8)(A)(i)(I); *see Leopold v. Dep't of Just.*, 94 F.4th 33, 37 (D.C. Cir. 2024) ("Even if an exemption covers an entire agency record, the agency still must release any reasonably segregable information within the record that could be disclosed without causing reasonably foreseeable harm to an interest that the exemption protects."); *Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation*, 3 F.4th 350, 369 (D.C. Cir. 2021) (explaining the FOIA Improvement Act of 2016's "foreseeable harm" requirement).

### IV.  ANALYSIS

Exemption 6 permits a federal agency to withhold certain records based on personal privacy concerns.  The parties here dispute the Department of State's application of this exemption to the two cables from the U.S. Embassies in Nairobi and Addis Ababa.  The Department of State argues that Meshal and others have privacy interests in the information contained within the cables, and that there is no public interest in the information because it does not reveal government functions.  Eddington responds that Meshal lacks a privacy interest because he revealed the information in a lengthy federal complaint, and that the cables would demonstrate when the Department of State knew about Meshal's detention, as well as its failure to bring Meshal back to the United States.  After reviewing the cables *in camera*, the Court concludes that Meshal does have a privacy interest in the information contained within the records, but that at least some of the information sheds light on government activities.  The Court

finds that release of six paragraphs within the Nairobi Cable would not represent a clearly unwarranted invasion of Meshal's personal privacy and directs the Department of State to release that information.

### A. Legal Standard for Exemption 6

Exemption 6 applies to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). There are three stages to analyzing whether Exemption 6 properly applies. *See Perioperative Servs. & Logistics, LLC v. U.S. Dep't of Veterans Affs.*, 57 F.4th 1061, 1067 (D.C. Cir. 2023). First, the analysis "requires . . . a determination of whether the document in question qualifies as a 'personnel, medical, or similar file.'" *Jud. Watch, Inc. v. Dep't of the Navy*, 25 F. Supp. 3d 131, 140 (D.D.C. 2014) (quoting *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1228 (D.C. Cir. 2008)). The term "similar files" is "construed broadly and is 'intended to cover detailed Government records on an individual which can be identified as applying to that individual.'" *Gov't Accountability Project v. U.S. Dep't of State*, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010) (quoting *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982)). Because Eddington does not contest the Department of State's characterization of the information withheld as "similar files," *see* Pl.'s Mem. in Opp'n to Def.'s Mot. Summ. J. and in Supp. of Pl.'s Cross-Mot. Summ. J. ("Pl.'s Mot.") at 10 n.2, ECF No. 49-1, the Court will not analyze this issue further.

Second, the Court must "determine whether there is a 'substantial' privacy interest in preventing the document[s'] disclosure." *Jud. Watch*, 25 F. Supp. 3d at 140 (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989)). "[U]se of the word

substantial in this [FOIA] context means less than it might seem. A substantial privacy interest is anything greater than a *de minimis* privacy interest." *Multi Ag Media*, 515 F.3d at 1229–30.

Third, if a substantial privacy interest has been identified, then the Court must "determine whether [the records'] disclosure 'would constitute a clearly unwarranted invasion of personal privacy'" within the meaning of the statute. *Id.* at 1228 (quoting 5 U.S.C. § 552(b)(6)). To do this, the Court "balance[s] the privacy interest that would be compromised . . . against any public interest in the requested information." *Id.*; *see also Sullivan v. Veterans Admin.*, 617 F. Supp. 258, 260 (D.D.C. 1985) (describing two steps to the balancing analysis: first, "identify[ing] the nature and magnitude of the various interests involved" and second, "balancing these competing interests"). To establish a public interest, a plaintiff must show "that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and that "the information is likely to advance that interest." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004). FOIA "tilt[s] the balance (of disclosure interests against privacy interests) in favor of disclosure." *Wash. Post. Co. v. U.S. Dep't of Health & Hum. Servs.*, 690 F.2d 252, 261 (D.C. Cir. 1982) (citing *Ditlow v. Shultz*, 517 F.2d 166, 169 (D.C. Cir. 1975)).

### B. Application to Department of State Cables

#### 1. Privacy Interest

The Department of State argues that it has carried its burden to demonstrate that Meshal has a privacy interest in the information contained within the records, as they relate to his familial relations, health, finances, and conditions of detention. *See* Mem. in Supp. Def.'s Mot. Summ. J. ("Def.'s Mot.") at 10–11, ECF No. 46-1. Eddington responds that this information "would ordinarily implicate a person's privacy," but that Meshal has no privacy interest because

8

he "has disclosed all that information in a highly publicized court action."  Pl.'s Mot. at 11.  The Court finds that Meshal and others have an enduring privacy interest in the information contained in the cables.

The Supreme Court has counseled that "[a]n individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form."  *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994).  There is a "privacy interest inherent in the nondisclosure of certain information even where the information may have been at one time public."  *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 767 (1989).  "[B]oth the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person."  *Id.* at 763.  The Court reads these cases to mean that Meshal has a privacy interest in information even though he previously placed some of the relevant facts into the public sphere.

Eddington cites several cases holding that individuals forfeit privacy interests when they choose to make certain information public.  *See* Pl.'s Mot. at 11–12 (citing, among others, *Citizens for Responsibility & Ethics in Washington v. DOJ* ("*CREW*"), 746 F.3d 1082, 1091–92 (D.C. Cir. 2014)).  In *CREW*, the D.C. Circuit considered whether an individual had a privacy interest in an FBI investigation into his activities after he announced publicly that the Department of Justice had declined to bring charges against him.  *CREW*, 746 F.3d at 1087.  The court reasoned that the FBI could disclose that it had records related to an investigation into the individual, as his "public statements confirmed he had been under investigation."  *Id.* at 1092 (discussing propriety of *Glomar* response).  The court concluded that although his "action lessened his interest in keeping secret the *fact* that he was under investigation, he retained a

second, distinct privacy interest in the *contents* of the investigative files." *Id.* at 1092. The court analogized the case to *Kimberlin v. Department of Justice*, in which "a prosecutor . . . publicly acknowledged he was the subject of a disciplinary investigation," but did not thereby "waive all his interest in keeping the contents of the [disciplinary] file confidential." *Id.* (quoting *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 949 (D.C. Cir. 1998)). In *Kimberlin*, the Circuit explained that the official "still ha[d] a privacy interest . . . in avoiding disclosure of the details of the investigation, of his misconduct, and of his punishment—and perhaps, too, an interest in preventing hitherto speculative press reports of his misconduct from receiving authoritative confirmation from an official source." *Kimberlin*, 139 F.3d at 949.

      The Court does not interpret this caselaw to mean that government agencies must release records containing sensitive personal information whenever an individual has revealed related information in a public forum. *Kimberlin* and *CREW* stand at most for the proposition that the Department of State correctly acknowledged that the cables exist and relate to Meshal's ordeal. *See Vaughn* Index (discussing the general topic of the cables); *see also* Redacted Nairobi Cable; Redacted Addis Ababa Cable. The Circuit counseled, however, that an individual's public discussion of the subject matter does not undermine his interest in avoiding release of the records' detailed contents. *See CREW*, 746 F.3d at 1092; *Kimberlin*, 139 F.3d at 949. It is true, as Eddington argues, that Meshal's federal complaint sharing his experience in foreign detention is readily available. *See* Pl.'s Reply at 2–3 (explaining that the complaint is available through PACER and on the internet). Yet the Court's *in camera* review confirms the Department of State's assertion that "the information redacted and the information in Meshal's complaint are not one and the same." Def.'s Reply at 6, ECF No. 52. Meshal's choice to reveal some

information during litigation does not vitiate his right to privacy regarding the remaining information.

In addition, Eddington is incorrect that Meshal wholly "lacks a privacy interest" in information he has shared elsewhere. Pl.'s Mot. at 14. Eddington points to *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885 (D.C. Cir. 1995), where the Circuit considered whether billionaire presidential candidate Ross Perot had a privacy interest in redaction of his name from records after he publicly offered private assistance to federal authorities in the interdiction of drugs. *See id.* at 888 & n.1. The court concluded there that "Perot's decision to bring information connecting himself with such efforts into the public domain differentiates his privacy interest from" others "who did not voluntarily divulge their identities" in relation to the requested records. *Id.* at 896. The Circuit reasoned in *Nation Magazine*, however, that "[Ross] Perot ha[d] some interest in nondisclosure of any records regarding his offers of assistance," but that it may be "less substantial" than an interest in records associating him with a criminal investigation, for example. *Id.* at 894. Perot retained an interest in nondisclosure even though he—like Meshal—made statements that received significant publicity. In *Kimberlin*, too, the court observed that the prosecutor's public statements about his disciplinary proceedings "diminish[ed]" his privacy interest, but did not destroy it entirely. 139 F.3d at 949; *see also CREW*, 746 F.3d at 1092 (explaining that the individual's public statements "lessened" his privacy interest, rather than eliminated it).[3] Thus, Meshal's privacy interest is

---

[3] The Court further observes that both cables contain information related to Meshal's family members. *See Vaughn* Index. The Circuit has instructed that one person's waiver of a privacy interest "has no effect on the privacy interests of others." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007); *see also Milton v. U.S. Dep't of Just.*, 783 F. Supp. 2d 55, 59 (D.D.C. 2011) (explaining that "a protected privacy interest can be waived only by the person whose interest is affected"). To the extent that Meshal could have fully waived his

potentially reduced regarding information he made public in his federal complaint, while his privacy interest in non-public information within the records remains fully intact. Meshal thus has "greater than a *de minimis* privacy interest" in the two records at issue here. *Multi Ag Media*, 515 F.3d at 1229–30.

### 2. Public Interest

The next step is to identify any public interest in the information within the requested records and then balance that with the privacy interests. *See Multi Ag Media*, 515 F.3d at 1228. The Department of State argues that the redacted information has "no relevancy or nexus" to a public interest. Def.'s Mot. at 11. Eddington responds that "the records would expand the public's understanding of State's failure to help Meshal despite his claims" of mistreatment, Pl.'s Mot. at 15, and that "the cables would likely illuminate whether and when State was aware of possible FBI involvement in Meshal's detention and how it reacted to learning those allegations," *id.* at 16. He additionally suggests that "the public has a strong interest in understanding how State investigates U.S. citizens' allegations of mistreatment while they are detained abroad." *Id.* at 17. The Court finds a public interest in six redacted paragraphs of the Nairobi Cable, and that release of those paragraphs would not constitute a clearly unwarranted invasion of Meshal's personal privacy.

"Where a legitimate privacy interest is implicated, the requester must '(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest.'" *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007) (quoting *Boyd v. Crim.*

---

privacy interests by filing a lawsuit about the subject matter of the cables, he could not waive the privacy interests of family members discussed in the cables.

*Div. of U.S. Dep't of Just.*, 475 F.3d 381, 387 (D.C. Cir. 2007)).  Exemption 6 applies only when disclosure of private information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Whether disclosure of private information is warranted turns on whether it furthers "the citizens' right to be informed about 'what their government is up to,'" including when "[o]fficial information . . . sheds light on an agency's performance of its statutory duties."  *Reps. Comm.*, 489 U.S. at 773.  Therefore, "[t]he only relevant public interest in disclosure 'is the extent to which disclosure would serve the core purpose of the FOIA, which is contribut[ing] significantly to public understanding of *the operations or activities of the government*.'"  *Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Hum. Servs.*, 554 F.3d 1046, 1051 (D.C. Cir. 2009) (internal quotation marks omitted) (quoting *U.S. Dep't of Def. v. FLRA*, 510 U.S. 487, 495 (1994)); *see also Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 173 (2004) (noting public interest in knowing whether "responsible officials acted negligently or otherwise improperly in the performance of their duties").  "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct."  *Reps. Comm.*, 489 U.S. at 773.

  Following its own *in camera* review, the Court agrees with the Department of State that most of the information in the cables lacks a relevant nexus to the public interest.  As explained in the *Vaughn* index, the cables largely detail Meshal's experience during foreign detention, his familial status, and his financial information.  *See Vaughn* Index.  This information does not reveal the "operations or activities of the government."  *Consumers' Checkbook Ctr.*, 554 F.3d at 1051 (emphasis removed).  Nor does it shed light on the Department of State's "performance of its statutory duties."  *Reps. Comm.*, 489 U.S. at 773.  As Meshal retains a privacy interest in this

information, and there is no public interest in its disclosure, the Department of State properly applied Exemption 6 to most of the paragraphs in the records. *See Milton v. U.S. Dep't of Just.*, 783 F. Supp. 2d 55, 59 (D.D.C. 2011) ("[E]ven a modest privacy interest outweighs nothing every time.").

The Court identifies six paragraphs of the Nairobi Cable, however, that do further the public's understanding of the "operations or activities of the government.'" *Consumers' Checkbook Ctr.*, 554 F.3d at 1051 (emphasis removed). Paragraph 1 provides a summary discussing FBI and other officials' contact with Meshal, while paragraphs 2 and 7 describe consular officials' efforts to locate him.[4] Paragraphs 6, 8, and 9 recount the embassy officials' protest to Kenyan authorities regarding deportation of U.S. citizens to Somalia, Meshal's later transfer to Ethiopia, and the officials' protest regarding lack of notification about Meshal's arrest. These paragraphs demonstrate the Department of State's "performance of its statutory duties." *Reps. Comm.*, 489 U.S. at 773. In particular, federal officials are empowered to seek information about, assist, and potentially demand the release of American citizens imprisoned abroad. *See* 22 U.S.C. § 1732; 22 U.S.C. § 2670(j); 22 C.F.R. § 71.1; 7 Foreign Affairs Manual §§ 411–17.5, 421–26.5. The Court thus finds that the "public interest sought to be advanced is a significant one," and that "the information is likely to advance th[is] interest" in the government's performance of these duties. *Sussman*, 494 F.3d at 1115.

These paragraphs do contain at least some information regarding Meshal's detention, but the details can also be found in Meshal's publicly available complaint. *See* Meshal Compl. ¶¶ 2,

---

[4] One parenthetical in paragraph 2 contains information about Meshal's place and date of birth that lacks a nexus to the public interest and may remain redacted. The last sentence of paragraph 7 discusses confidential family information that lacks a nexus to a public interest and may remain redacted.

108–15, 119. He thus has a reduced privacy interest in those facts. In contrast, the Court finds a substantial public interest in the Department of State's actions responding to his detention. The Court therefore finds that this invasion of Meshal's personal privacy is not "unwarranted," much less clearly so. *See Reps. Comm.*, 489 U.S. at 756 (explaining that "whereas Exemption 6 requires that the invasion of privacy be 'clearly unwarranted,' the adverb 'clearly' is omitted from Exemption 7(C)," creating a comparatively higher bar for withholding under Exemption 6).

### 3. Foreseeable Harm

Although some information within the records must be released, the Court must nonetheless consider whether releasing the paragraphs the Department of State has otherwise properly redacted would foreseeably harm the privacy interests at issue here. *See Leopold*, 94 F.4th at 37 (quoting 5 U.S.C. § 552(a)(8)(A)(i)). "[W]hether a requested record falls within an exemption and whether the disclosure of that record would foreseeably harm an interest protected by the exemption are distinct, consecutive inquiries." *Id.* "Agencies, therefore, must provide 'a focused and concrete demonstration of why disclosure of the particular type of material at issue will . . . actually impede' the interests protected by a FOIA exemption." *Id.* (quoting *Reps. Comm.*, 3 F.4th at 370). The Court established above that Meshal has a privacy interest in the records at issue in this litigation, which has not been forfeited by his decision to publicly reveal some information in his *Bivens* lawsuit. As the Department of State described in its *Vaughn* Index and declaration, and as the Court has confirmed, the redacted information is personal in nature and relates to a particular individual's travel, detention, and repatriation experience. *See Vaughn* Index; Second Weetman Decl. ¶¶ 15–20, ECF No. 47-2. Disclosure of those paragraphs within the records would inevitably harm Meshal's privacy interest, as well as those of his family members mentioned within the documents, by making the information public.

The Court thus finds that the Department of State has shown that disclosure of the remaining paragraphs would foreseeably harm an interest protected by Exemption 6.

### C. Segregability

The Department of State argues that it "carefully reviewed all three cables and released all segregable, non-exempt information to Plaintiff." Def.'s Mot. at 12. The agency also explains that it "conducted a line-by-line review" of each record and found "no additional meaningful, non-exempt information that can be reasonably segregated and released." *Vaughn Index*. Eddington's segregability argument relies largely on the notion that the records contain information in which Meshal lacks a privacy interest, and that some of that information must be segregable. *See* Pl.'s Mot. at 14. The Court has found that Meshal does have a privacy interest in the redacted information, but it must nonetheless make a finding as to segregability. *See Sussman*, 494 F.3d at 1116.

Even when FOIA exemptions apply, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). This rule of segregation applies to all FOIA exemptions. *See Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

The Court has identified six paragraphs in the Nairobi Cable that may be reasonably segregated from Meshal's exempted personal information. The Department of State may additionally redact the parenthetical in paragraph 2 relaying Meshal's place and date of birth, as well as the last sentence of paragraph 7 discussing Meshal's family members. The remaining

16

parts of the two records relay Meshal's personal information, and based on its *in camera* review the Court finds no "non-exempt portions" to disclose. *Id.* at 260. The agency has thus carried out its segregability obligations regarding the material that may remain redacted within the records.

## V.  CONCLUSION

For the foregoing reasons, the Department of State's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**, and Eddington's Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**; and it is

**FURTHER ORDERED** that the Department of State shall release paragraphs 1, 2 (other than place and date of birth information), 6, 7 (other than the last sentence of the paragraph), 8, and 9 of the Nairobi Cable, Doc. No. C06842040. The Department of State has carried its burden to demonstrate proper application of FOIA Exemption 6 to the remaining information in the records. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  March 27, 2025                                        RUDOLPH CONTRERAS
                                                              United States District Judge